**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ADRIAN J. JOHNSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _______________ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **ANDREW VENABLE,** | ) | |
| in his individual capacity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ALEXANDER BURTON,** | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS**
**(42 U.S.C. § 1983)**

Plaintiff Adrian J. Johnson, without counsel, states as follows for her Verified Complaint against Defendants Andrew Venable and Alexander Burton. Headings and defined terms are for organization only and are not allegations.

## NATURE OF THE ACTION

1. This is an action for damages under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. It arises from events on March 19, 2026, in the City of St. Louis, Missouri.

## PARTIES

2. Plaintiff Adrian J. Johnson is an adult.

3. On March 19, 2026, Defendant Andrew Venable was a police officer employed by the St. Louis Metropolitan Police Department ("SLMPD").

4. On March 19, 2026, Defendant Venable was on duty as an SLMPD police officer.

5. On March 19, 2026, Defendant Alexander Burton was a police officer employed by SLMPD.

6. On March 19, 2026, Defendant Burton was on duty as an SLMPD police officer.

7. Plaintiff sues each Defendant in his individual capacity.

## JURISDICTION AND VENUE

8. This action arises under 42 U.S.C. § 1983 and the United States Constitution.

9. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

10. The events described in this Complaint occurred in the City of St. Louis, Missouri.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

12. The City of St. Louis is in this District's Eastern Division. 28 U.S.C. § 105(a)(1).

## RELATED CASE

13. In Case No. 4:26-cv-00987-CMS in this Court, Plaintiff asserted claims against unnamed "John Doe" police officers arising from the events of March 19, 2026.

14. Neither Defendant has been made a party to, or served in, Case No. 4:26-cv-00987-CMS.

15. On November 17, 2026, the Court in Case No. 4:26-cv-00987-CMS denied Plaintiff leave to amend her complaint in that case to name Defendants.

16. Plaintiff has voluntarily dismissed, without prejudice, her claims against the John Doe officers in Case No. 4:26-cv-00987-CMS. Fed. R. Civ. P. 41(a)(1)(A)(i).

## FACTS

### A. The Vehicle

17. On March 19, 2026, Plaintiff was the lessee of a 2026 BMW iX xDrive60, VIN WB553CF07TCV17803 (the "Vehicle").

18. On March 19, 2026, Plaintiff's personal belongings were inside the Vehicle.

19. On information and belief, on March 19, 2026, no court had issued any order, judgment, writ, or warrant authorizing any person to take the Vehicle from Plaintiff.

### B. Before Defendants Arrived

20. On March 19, 2026, Plaintiff drove the Vehicle to the parking lot of a Burger King restaurant in the City of St. Louis, Missouri (the "Lot").

21. A tow truck operator (the "Tow Operator") came to the Lot in a flatbed tow truck.

22. The Tow Operator was not a law enforcement officer.

23. Plaintiff was sitting in the driver's seat of the Vehicle when the Tow Operator attached tow equipment to the Vehicle.

24. Plaintiff then got out of the Vehicle.

25. Plaintiff asked the Tow Operator, more than once, to unhook the Vehicle.

26. The Tow Operator refused to unhook the Vehicle.

27. Plaintiff told the Tow Operator that his equipment was going to flatten one of the Vehicle's tires.

28. The Tow Operator told Plaintiff that he was “waiting on the police.”

29. When Defendants arrived at the Lot, the Tow Operator had not loaded the Vehicle onto the tow truck.

**C. The Recording**

30. Plaintiff recorded part of her encounter with Defendants on her phone.

31. Exhibit A, filed with this Complaint, is a true and accurate copy of that recording (the “Recording”).

32. Citations in the form “(Ex. A, 01:01)” refer to elapsed time on the Recording in minutes and seconds.

**D. The Two Officers**

33. Defendant Venable and Defendant Burton were the only police officers who came to the Lot before the Tow Operator left with the Vehicle.

34. When the Recording begins, one Defendant is standing in the Vehicle’s open driver-side doorway. (Ex. A, 00:00.)

35. This Complaint calls that Defendant “Officer A” and the other Defendant “Officer B.”

36. Plaintiff does not know which Defendant is Officer A and which is Officer B.

37. Pleaded in the alternative under Fed. R. Civ. P. 8(d)(2): Defendant Venable was Officer B.

38. Pleaded in the alternative under Fed. R. Civ. P. 8(d)(2): Defendant Burton was Officer B.

**E. What Defendants Said and Did Before the Handcuffing**

39. When the Recording begins, the Vehicle is on the pavement of the Lot, parked against a curb. (Ex. A, 00:00.)

40. The Vehicle's front driver-side door is open. (Ex. A, 00:00.)

41. The Vehicle's rear driver-side tire is flat. (Ex. A, 00:00; 01:11–01:18.)

42. The tow truck is parked near the Vehicle. (Ex. A, 01:08–01:10.)

43. Plaintiff said to Defendants: "So y'all are going to let him steal my car?" (Ex. A, 00:01.)

44. Plaintiff said: "I'm asking you a question." (Ex. A, 00:13.)

45. Officer B answered: "How many times I got to answer the question?" (Ex. A, 00:14.)

46. Plaintiff said: "So—so you guys are going to let him take my car, and if I don't give it to him, I'm going to—" (Ex. A, 00:15.)

47. Officer B said: "We're going to let him take the car that the bank owns because you defaulted on payments." (Ex. A, 00:19.)

48. Plaintiff answered: "But he's not the bank." (Ex. A, 00:21.)

49. Plaintiff said: "I didn't default on no payments." (Ex. A, 00:21–00:27.)

50. Officer B said: "Okay, well then you can take that up with the bank." (Ex. A, 00:28.)

51. Plaintiff said: "But he's still taking my car, though." (Ex. A, 00:30.)

52. Officer A leaned into the Vehicle's driver compartment. (Ex. A, 00:32.)

53. Officer A asked: "Yeah, how do you get it in neutral?" (Ex. A, 00:32.)

54. Placing the Vehicle in neutral would allow its wheels to roll freely.

55. Officer A was in the Vehicle's doorway before Plaintiff said anything about the Vehicle's controls. (Ex. A, 00:00–00:36.)

56. Plaintiff answered: "Push the button." (Ex. A, 00:36.)

57. Officer A said: "Reach in the window and just—" (Ex. A, 00:37.)

58. Plaintiff then said: "It's the button right there on the side." (Ex. A, 00:39.)

59. Plaintiff then said: "Y'all ain't supposed to be enforcing him to get my car. . . . [W]hether it's about payments or not, that's not y'all job." (Ex. A, 00:43.)

60. Officer A remained at the Vehicle's open driver-side door. (Ex. A, 00:44–00:59.)

61. Officer A stepped onto the Vehicle's door sill and leaned farther into the Vehicle. (Ex. A, 00:54.)

62. Plaintiff asked: "So what am I going to go to jail for?" (Ex. A, 00:59.)

63. Officer A answered: "Right now, nothing, if there's property's not damaged." (Ex. A, 01:01.)

64. Plaintiff asked: "But if I don't let him take my car, what am I going to go to jail for?" (Ex. A, 01:03.)

65. Officer A answered: "Who knows? Breach of the peace, disturbance, or whatever my supervisor says, because it's not your car." (Ex. A, 01:06.)

66. Officer B then said: "In fact, you know what he told me? 'That's not your car. You tried to steal the car, and then damaged the car.' So you can go for stealing a car. How does that sound?" (Ex. A, 01:10.)

67. Plaintiff said: "That's my—that car is in my name. Why don't you run the plate for me? Ain't no lienholder on my car. Run the plate." (Ex. A, 01:18.)

68. Officer B said: “You want to push this? . . . Is that what you want to do? . . . Is that what we’re doing?” (Ex. A, 01:26–01:30.)

69. Plaintiff held up her identification card. (Ex. A, 01:27.)

70. Plaintiff said: “To run the plate? To run the plate? I’m asking you if you could run the plate.” (Ex. A, 01:30.)

71. During the Recording, neither Defendant told Plaintiff that he had run, or would run, the Vehicle’s license plate.

72. During the Recording, before she was handcuffed, Plaintiff did not touch either Defendant.

73. During the Recording, before she was handcuffed, Plaintiff did not touch the Tow Operator, the tow truck, or the Vehicle.

74. During the Recording, Plaintiff did not say that she would harm any person or damage any property.

75. In the ten seconds before Officer B took hold of her, Plaintiff did not move toward the Vehicle, the tow truck, the Tow Operator, or either Defendant. (Ex. A, 01:27–01:37.)

76. On March 19, 2026, Plaintiff did not have a weapon.

**F. The Handcuffing**

77. Officer B took hold of Plaintiff. (Ex. A, 01:36–01:37.)

78. Fewer than ten seconds passed between Plaintiff’s statement, “I’m asking you if you could run the plate,” and Officer B taking hold of her. (Ex. A, 01:30–01:37.)

79. As Officer B took hold of her, Plaintiff asked: “What am I doing wrong now?” (Ex. A, 01:36–01:37.)

80. Officer B said: “Put your hands behind your back. . . . Come on, put your hands behind your back. Come on.” (Ex. A, 01:38–01:39.)

81. Officer B handcuffed Plaintiff’s wrists behind her back. (Ex. A, 01:38–01:45.)

82. While she was being handcuffed, Plaintiff asked “What am I doing wrong now?” at least two more times. (Ex. A, 01:40–01:46.)

83. Officer B did not answer Plaintiff’s question, “What am I doing wrong now?” (Ex. A, 01:36–02:12.)

84. Officer B did not tell Plaintiff why he was handcuffing her. (Ex. A, 01:36–02:12.)

85. Plaintiff said: “All I did was ask you if you could run the plate.” (Ex. A, 01:46; 01:57.)

86. Officer B said: “Sit on the curb. . . . Sit down. Sit down.” (Ex. A, 01:59.)

87. Plaintiff sat on the curb in handcuffs. (Ex. A, 02:01.)

88. When Plaintiff was handcuffed, the Vehicle was still on the pavement of the Lot. (Ex. A, 01:48–01:58.)

89. When Plaintiff was handcuffed, the tow truck was still parked in the Lot. (Ex. A, 01:48–01:49.)

90. Immediately after Plaintiff was handcuffed, Officer A was beside the Vehicle’s open driver-side door. (Ex. A, 01:48–01:50.)

91. Fewer than forty seconds passed between Officer A’s answer, “Right now, nothing, if there’s property’s not damaged,” and Officer B taking hold of Plaintiff. (Ex. A, 01:01–01:37.)

92. Plaintiff asked: “Can I talk to a sergeant?” (Ex. A, 02:44.)

93. Officer B answered: “Yeah, I’ll call a sergeant for you.” (Ex. A, 02:51.)

94. No sergeant came to the Lot before the Tow Operator left with the Vehicle.

**G. The Tow, the Searches, and the Release**

95. The Tow Operator did not load the Vehicle onto the tow truck until after Officer B handcuffed Plaintiff.

96. While Plaintiff was handcuffed, the Tow Operator loaded the Vehicle onto the tow truck.

97. While Plaintiff was handcuffed, the Tow Operator drove out of the Lot with the Vehicle.

98. Plaintiff's personal belongings were still inside the Vehicle when the Tow Operator drove away with it.

99. At the Lot, a police officer searched Plaintiff's person.

100. Plaintiff told Defendants not to search her.

101. Pleaded in the alternative under Fed. R. Civ. P. 8(d)(2): Defendant Venable searched Plaintiff's person.

102. Pleaded in the alternative under Fed. R. Civ. P. 8(d)(2): Defendant Burton searched Plaintiff's person.

103. At the Lot, a police officer searched the interior of the Vehicle.

104. Plaintiff told Defendants not to search the Vehicle.

105. Pleaded in the alternative under Fed. R. Civ. P. 8(d)(2): Defendant Venable searched the interior of the Vehicle.

106. Pleaded in the alternative under Fed. R. Civ. P. 8(d)(2): Defendant Burton searched the interior of the Vehicle.

107. Plaintiff does not know which Defendant performed each search.

108. Neither Defendant had a warrant to search Plaintiff or the Vehicle.

109. Neither Defendant found a weapon on Plaintiff or in the Vehicle.

110. At no time on March 19, 2026, did either Defendant show Plaintiff any court order, judgment, writ, or warrant concerning the Vehicle.

111. Plaintiff remained handcuffed until after the Tow Operator drove out of the Lot with the Vehicle.

112. Plaintiff was released at the Lot.

113. Neither Defendant issued Plaintiff a citation, ticket, or summons.

114. Plaintiff has not received any citation, summons, or notice of a criminal charge arising from the events of March 19, 2026.

### H. Losses

115. Plaintiff has not had possession of the Vehicle since March 19, 2026.

116. The Vehicle was Plaintiff's only means of transportation.

117. Plaintiff was handcuffed in the Lot beside a public road, in view of passing traffic.

118. Being handcuffed in the Lot caused Plaintiff fear and humiliation.

119. Being searched after telling Defendants not to search her humiliated Plaintiff.

120. Plaintiff has suffered emotional distress.

## CLAIMS FOR RELIEF

### COUNT I
### Unreasonable Seizure of the Vehicle
(Fourth and Fourteenth Amendments; 42 U.S.C. § 1983)
Against Defendant Venable and Defendant Burton

121. Plaintiff incorporates paragraphs 1 through 120.

122. Each Defendant acted under color of state law.

123. Officer A stood in the Vehicle's open driver-side doorway, leaned into its driver compartment, asked how to put the Vehicle in neutral, said "Reach in the window and just—," and stepped onto the Vehicle's door sill, while the tow truck was parked nearby. (¶¶ 34, 42, 52–54, 57, 60–61.)

124. When Plaintiff asked what she would go to jail for if she did not let the Tow Operator take the Vehicle, Officer A answered: "Who knows? Breach of the peace, disturbance, or whatever my supervisor says, because it's not your car." (¶¶ 64–65.)

125. Officer B told Plaintiff, "We're going to let him take the car that the bank owns because you defaulted on payments," and told her she could "go for stealing a car." (¶¶ 47, 66.)

126. Officer B handcuffed Plaintiff while the Vehicle was still on the pavement, and Plaintiff remained handcuffed while the Tow Operator loaded the Vehicle and drove away with it. (¶¶ 81, 88, 95–97, 111.)

127. Before Defendants arrived, the Tow Operator had not loaded the Vehicle and had told Plaintiff he was "waiting on the police." He did not load the Vehicle until after Officer B handcuffed Plaintiff. (¶¶ 28–29, 95.)

128. Defendants' acts described in paragraphs 123 through 126 aided the Tow Operator in taking the Vehicle from Plaintiff over her objection, and the Vehicle would not have been taken from Plaintiff on March 19, 2026, without those acts.

129. No warrant, court order, or other legal process authorized the taking of the Vehicle, and Defendants showed Plaintiff none. (¶¶ 19, 110.)

130. Defendants thereby seized the Vehicle unreasonably, in violation of the Fourth Amendment as applied to the States through the Fourteenth Amendment.

131. As a direct result, Plaintiff lost the use of the Vehicle and of the belongings inside it and suffered the other injuries described in paragraphs 115 through 120.

## COUNT II
## Unreasonable Seizure of Plaintiff's Person

(Fourth and Fourteenth Amendments; 42 U.S.C. § 1983)
Against Officer B (Defendant Venable or Defendant Burton, pleaded in the alternative under Fed. R. Civ. P. 8(d)(2))

132. Plaintiff incorporates paragraphs 1 through 131.

133. This Count is asserted against Defendant Venable if he was Officer B, and against Defendant Burton if he was Officer B. (¶¶ 34–38.)

134. Officer B, acting under color of state law, took hold of Plaintiff, handcuffed her, and told her to sit on the curb, where she remained handcuffed until after the Tow Operator drove out of the Lot with the Vehicle. (¶¶ 77–87, 95–97, 111.)

135. Fewer than forty seconds before Officer B took hold of Plaintiff, when Plaintiff asked what she would go to jail for, Officer A answered: "Right now, nothing, if there's property's not damaged." (¶¶ 62–63, 91.)

136. Immediately before Officer B took hold of Plaintiff, Plaintiff had asked Defendants to run the Vehicle's license plate; she had not touched anyone, had not said that she would harm any person or damage any property, and had not moved toward the Vehicle, the tow truck, the Tow Operator, or either Defendant. (¶¶ 67, 70, 72–75.)

137. Plaintiff was released at the Lot, and she has received no citation, summons, or notice of a charge. (¶¶ 112–114.)

138. When Officer B handcuffed and detained Plaintiff, he had neither probable cause nor reasonable suspicion to believe that she had committed, was committing, or was about to commit any offense.

139. The handcuffing and detention were unreasonable seizures of Plaintiff's person, in violation of the Fourth Amendment as applied to the States through the Fourteenth Amendment.

140. As a direct result, Plaintiff suffered the injuries described in paragraphs 115 through 120, including fear and humiliation.

**COUNT III**
**First Amendment Retaliation**
(First and Fourteenth Amendments; 42 U.S.C. § 1983)
Against Officer B (Defendant Venable or Defendant Burton,
pleaded in the alternative under Fed. R. Civ. P. 8(d)(2))

141. Plaintiff incorporates paragraphs 1 through 140.

142. This Count is asserted against Defendant Venable if he was Officer B, and against Defendant Burton if he was Officer B. (¶¶ 34–38.)

143. Plaintiff engaged in speech protected by the First Amendment when she told Defendants that the Tow Operator was "not the bank" and that enforcing his taking of her car was "not y'all job," and when she asked Defendants to run the Vehicle's license plate. (¶¶ 48, 59, 67, 70.)

144. Officer B's response to Plaintiff's first request that Defendants run the license plate was: "You want to push this?" (¶¶ 67–68.)

145. Fewer than ten seconds after Plaintiff's last request that Defendants run the license plate, Officer B took hold of her and then handcuffed her. (¶¶ 70, 77–78, 81.)

146. Being handcuffed and detained would chill a person of ordinary firmness from continuing to speak to the police.

147. Officer B handcuffed and detained Plaintiff because of her protected speech, and he lacked probable cause to do so. (¶ 138.)

148. As a direct result, Plaintiff suffered the injuries described in paragraphs 115 through 120.

**COUNT IV**
**Unreasonable Search of Plaintiff's Person**
(Fourth and Fourteenth Amendments; 42 U.S.C. § 1983)
Against Defendant Venable and/or Defendant Burton,
pleaded in the alternative under Fed. R. Civ. P. 8(d)(2)

149. Plaintiff incorporates paragraphs 1 through 148.

150. This Count is asserted against each Defendant who searched Plaintiff's person. (¶¶ 99–102, 107.)

151. One or both Defendants, acting under color of state law, searched Plaintiff's person after she told them not to, and without a warrant. (¶¶ 99–102, 108.)

152. Plaintiff did not have a weapon, no weapon was found on her, and she had not said that she would harm anyone. (¶¶ 74, 76, 109.)

153. No Defendant had probable cause to arrest Plaintiff, reasonable suspicion that she was armed and dangerous, or any other lawful basis to search her.

154. The search was unreasonable, in violation of the Fourth Amendment as applied to the States through the Fourteenth Amendment.

155. As a direct result, Plaintiff suffered the injuries described in paragraphs 119 and 120.

**COUNT V**
**Unreasonable Search of the Vehicle**
(Fourth and Fourteenth Amendments; 42 U.S.C. § 1983)
Against Defendant Venable and/or Defendant Burton,
pleaded in the alternative under Fed. R. Civ. P. 8(d)(2)

156. Plaintiff incorporates paragraphs 1 through 155.

157. This Count is asserted against each Defendant who searched the Vehicle. (¶¶ 103–107.)

158. One or both Defendants, acting under color of state law, searched the interior of the Vehicle after Plaintiff told them not to, and without a warrant. (¶¶ 103–106, 108.)

159. No Defendant had probable cause to believe that the Vehicle contained contraband or evidence of any offense, and no other lawful basis for the search existed.

160. The search was unreasonable, in violation of the Fourth Amendment as applied to the States through the Fourteenth Amendment.

161. As a direct result, Plaintiff suffered the injuries described in paragraphs 119 and 120.

## PUNITIVE DAMAGES

162. Each Defendant acted with reckless or callous indifference to Plaintiff's federally protected rights, as shown by the facts in paragraphs 47, 52–53, 60–61, 65–68, 77–91, 95–97, and 111–114.

163. Plaintiff seeks punitive damages against each Defendant.

## RELIEF REQUESTED

WHEREFORE, Plaintiff asks the Court to enter judgment in her favor and against each Defendant, and to award:

A. compensatory damages in an amount to be determined by the jury or, in the alternative, nominal damages;

B. punitive damages against each Defendant in an amount to be determined by the jury;

C. Plaintiff's costs;

D. reasonable attorney’s fees under 42 U.S.C. § 1988(b) for any attorney who appears for Plaintiff in this action;

E. post-judgment interest as allowed by law; and

F. any other relief the Court finds just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

Dated: November 23, 2026

Respectfully submitted,

Adrian J. Johnson
Plaintiff, without counsel
Mailing address:
95 W 11th St
Tracy CA 95304
Telephone: 279-292-9668
Email: kingsdaughter612@gmail.com

## VERIFICATION

I, Adrian J. Johnson, declare under penalty of perjury that the factual statements in this Verified Complaint are true and correct. Statements made on information and belief I believe to be true. Statements pleaded in the alternative are pleaded that way because I do not know which alternative is true. 28 U.S.C. § 1746.

Executed on November 23, 2026.

Adrian J. Johnson

## EXHIBIT INDEX

Exhibit A — Plaintiff's video recording of March 19, 2026 (filed with the Clerk on a USB flash drive).